Mary Ellen BYRNE, Plaintiff–Appellant,

v.

BOARD OF EDUCATION, SCHOOL OF WEST ALLIS–WEST MILWAUKEE, Defendant–Appellee.

No. 91–1113.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 4, 1991.

Decided Nov. 10, 1992.

Arthur Heitzer, Milwaukee, Wis. (argued), for plaintiff-appellant.

Herbert P. Wiedemann (argued), Thomas Pence, Foley & Lardner, Milwaukee, Wis., for defendant-appellee.

Before WOOD, Jr. and CUDAHY, Circuit Judges, and GRANT, Senior District Judge.*

* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

GRANT, Senior District Judge.

Appellant Mary Ellen Byrne was an elementary school teacher in West Allis–West Milwaukee, Wisconsin, whose employment was terminated by the appellee Board of Education of that school district ["School Board"]. Alleging discriminatory treatment by the School Board because of her handicap, a sensitivity to the fungus *aspergillus fumigatus*, Ms. Byrne brought this action based upon federal claims under the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Civil Rights Act, 42 U.S.C. § 1983, and upon a state claim under the Wisconsin Fair Employment Act, § 111.31 et seq. Wis. Stats. Following a ten-day trial the jury issued a verdict in favor of the School Board. Ms. Byrne's appeal challenges the trial court's denial of her motions for directed verdict and new trial.

## I. BACKGROUND

Appellant started teaching for the School Board in the suburban Milwaukee district in 1965; she was transferred from Franklin to General Mitchell Elementary School in 1978. During the 1983 school year, Ms. Byrne began experiencing respiratory difficulties, sinus and throat problems, fatigue and flu-like symptoms which grew worse during the work week but got better on weekends and in the summer. In December 1983 Ms. Byrne consulted Jordan Fink, M.D., professor at the Medical College of Wisconsin and Chief of its Allergy Department. Upon his advice she reported to the school principal that her classroom seemed to be a source of her discomfort and that her doctor had made various recommendations for change. In response the school district inspected and cleaned the heating and ventilating system, added new filters, tested the temperature and humidity in her classroom, analyzed dust samples, removed the fiberglass drapes, and installed a humidifier. Nevertheless, Ms. Byrne's symptoms persisted.

After a period of intermittent absences, Ms. Byrne began a medical leave of absence on December 6, 1984. In January 1985 she was hospitalized for a lung challenge test which revealed that she was allergic to *aspergillus fumigatus*, a common fungus found in many environments, and possibly to other potentially toxic airborne organisms. Dr. Fink advised her that exposure could lead to permanent lung disease; he refused to release her to work in an environment where there was an undue risk of contact with the fungus. On the physician's recommendation, the School Board transferred her. However, Ms. Byrne's brief attempt to teach at Longfellow School in February 1985 proved unsuccessful; she worked there only two weeks.

Away from the classroom, however, her symptoms decreased. Between February 1985 and December 1989 Ms. Byrne gradually did volunteer work, had part-time jobs, completed her masters degree in education, and resumed some physical activities. There were openings for elementary school teachers during that time; however, Ms. Byrne claimed that none was offered to her, and the School Board responded that she did not apply for any of them. After granting Ms. Byrne medical leaves for two and one-half years, in August 1987 the School Board terminated her employment.

Ms. Byrne commenced this action alleging that she was a handicapped individual and that the School Board violated her rights, first by failing to accommodate her handicap within the workplace and then by terminating her because of her handicap. Once the district court denied defendant's motion for summary judgment, the jury trial began on July 9, 1990. Plaintiff's witnesses included an expert on building ventilation systems and her physician, Dr. Fink, an expert on pulmonary diseases. The evidence was conflicting as to whether exposure at school caused her symptoms, and whether the school's responses to her doctor's requests for improvements in Ms. Byrne's classroom were adequate. Dr. Fink stated that Ms. Byrne was not totally disabled to teach in any classroom or school; he believed that the situation could be fixed. At the close of evidence, Ms. Byrne requested a directed verdict. After the court denied that motion, the jury answered a general verdict in favor of the School Board. Following the court's denial

of her motion for new trial, Ms. Byrne filed this appeal.

## II. THE STATUTE AND REGULATIONS

Section 504 of the Rehabilitation Act of 1973 makes it unlawful for a federal grant recipient to discriminate against an otherwise qualified handicapped individual. *Carter v. Casa Central*, 849 F.2d 1048, 1053 (7th Cir.1988) (citing *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 626, 104 S.Ct. 1248, 1250, 79 L.Ed.2d 568 (1984), and *Anderson v. University of Wisconsin*, 841 F.2d 737, 740 (7th Cir.1988)). The Act requires that:

> [n]o otherwise qualified individual with handicaps ... shall, solely by reason of her or his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C. § 794(a). Therefore a plaintiff basing her claim upon the Act must establish that (1) she is an "individual with handicaps"; (2) she is "otherwise qualified"; (3) she is excluded from programs solely because of the handicap; and (4) the programs from which she is excluded are operated by an agency that is federally funded. In this case the last element was not challenged; but, with respect to the other three, Ms. Byrne bore the initial burden at trial of establishing that she was entitled to protection under the Act by offering proof concerning each requirement. *See Taub v. Frank*, 957 F.2d 8, 10 (1st Cir.1992); *Gilbert v. Frank*, 949 F.2d 637, 640 (2nd Cir. 1991).

In determining whether a person is "handicapped," the regulations promulgated by the Department of Health and Human Services with the oversight and approval of Congress are of significant assistance. *School Board of Nassau County v. Arline*, 480 U.S. 273, 279, 107 S.Ct. 1123, 1127–28, 94 L.Ed.2d 307 (1987). In both the statute and the regulations "individual with handicaps" is defined as:

any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.

29 U.S.C. § 706(8)(B);[1] 45 C.F.R. § 84.-3(j)(1) (1990). The regulations then elucidate the critical terms of that definition:

> *Physical ... impairment* means (A) any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine....

> *Major life activities* means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

45 C.F.R. § 84.3(j)(2)(i) and (ii). The *Arline* Court explains that "the definition of 'handicapped individual' is broad, but only those individuals who are both handicapped *and* otherwise qualified are eligible for relief." *Arline*, 480 U.S. at 284–85, 107 S.Ct. at 1129.

## III. MOTION FOR DIRECTED VERDICT

According to the appellant, the evidence established as a matter of law that she qualified as a "handicapped individual" and that she was fired because of that handicap. In this appeal she claims that the district court erred in denying her motion for a directed verdict on those two key elements of 29 U.S.C. § 706(8).

### A. *Standard of Review*

Rule 50 of the Federal Rules of Civil Procedure, which governs the trial court's decision whether to direct a verdict, gives the court discretion to grant judgment against a party that has failed to present

---

1. This provision was designated § 706(7)(B) in *Arline*. However, when the section was amended in 1986, paragraph 7 was renumbered to become paragraph 8.

legally sufficient evidence on a claim it has fully argued.[2] If the court determines that the party bearing the burden of proof has produced sufficient evidence upon which a jury could properly proceed to a verdict, it may direct the verdict. *Richardson v. Indianapolis,* 658 F.2d 494, 498 (7th Cir. 1981), *cert. denied,* 455 U.S. 945, 102 S.Ct. 1442, 71 L.Ed.2d 657 (1982) (*quoted in Garrett v. Barnes,* 961 F.2d 629, 632 (7th Cir. 1992)). On the other hand, the trial court may appropriately refuse a motion to direct a verdict

> " 'where the evidence, along with the inferences to be reasonably drawn therefrom, when viewed in the light most favorable to the party opposing such motion, is such that reasonable men in a fair and impartial exercise of their judgment may reach different conclusions.' "

*Garrett,* 961 F.2d at 631 (quoting *McClure v. Cywinski,* 686 F.2d 541, 544 (7th Cir. 1982)).

■ Our review of the trial court's denial of a motion for directed verdict is *de novo. Garrett,* 961 F.2d at 632. However, we review all the evidence in the light most favorable to the nonmovant School Board, and will not reverse such a denial unless the evidence permits only one reasonable conclusion: a verdict in favor of the movant Ms. Byrne. *Wallace v. Mulholland,* 957 F.2d 333, 337 (7th Cir.1992) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) and *Warrington v. Elgin, Joliet & Eastern Ry. Co.,* 901 F.2d 88, 89 (7th Cir.1990)).

## B. *Section 706(8)(B)(i)*

■ It is not disputed that Ms. Byrne's sensitivity to *aspergillus* is a physical impairment. The first issue, then, is whether it is a "substantial limitation" of a "major life activity," as the statutory definition in 29 U.S.C. § 706(8)(B)(i) requires. The statute's inclusion of the limiting adjectives "substantial" and "major" emphasizes that

the impairment must be a significant one. *Forrisi v. Bowen,* 794 F.2d 931, 933–34 (4th Cir.1986).

Citing *E.E. Black v. Marshall,* 497 F.Supp. 1088, 1098 (D.Hawaii 1980), Ms. Byrne describes her medical difficulty as a "condition which weakens, diminishes, restricts, or otherwise damages" her health, and asserts that it limits her life activities of breathing and working. She argues that her respiratory condition is similar to that of Ms. Arline, the school teacher whose tuberculosis, reappearing after a twenty-year remission period, was found to be a handicap by the Supreme Court in *Arline,* 480 U.S. at 289, 107 S.Ct. at 1131. Because of her impairment, she contends, she has been excluded or substantially limited from continuing her teaching career.

Few cases have spent time on the question of who is a "handicapped individual," because the issue usually requires little analysis. *Tudyman v. United Airlines,* 608 F.Supp. 739, 744 (D.Cal.1984) (citing cases). Some courts assume, without deciding, that a person's condition constitutes a handicap because it is clear that he or she failed to fulfill the required showing of the other elements. *See, e.g., Taub,* 957 F.2d at 10. Others have found that the condition at issue may not even be an impairment. *See, e.g., de la Torres v. Bolger,* 781 F.2d 1134 (5th Cir.1986) (left-handedness); *Jasany v. U.S. Postal Service,* 755 F.2d 1244 (6th Cir.1985) (crossed eyes); *Tudyman, supra* (muscular build); *Stevens v. Stubbs,* 576 F.Supp. 1409 (N.D.Ga.1983) (transitory illnesses with no permanent health effects). However, the Supreme Court established the analytical framework for determining who is a "handicapped person" in *Arline.* Three other decisions that comprehensively considered the definition of "individual with handicaps" are the Fourth Circuit's *Forrisi,* the Sixth Circuit's *Jasany,* and the seminal *Black* decision from the District Court of Hawaii. Their

---

**2.** Rule 50, *Judgment as a Matter of Law:*
If during a trial by jury a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law against that party....

cogent analyses guide our consideration herein.

█ Whether or not a person is handicapped under the Act is an individualized inquiry, best suited to a case-by-case determination. *U.S. v. Southern Management Corp.*, 955 F.2d 914, 918 (4th Cir.1992) (citing *Forrisi* ). The court must ask "whether the particular impairment constitutes for the particular person a significant barrier to employment." *Forrisi*, 794 F.2d at 933. *See Arline*, 480 U.S. at 279, 107 S.Ct. at 1126. Factors to consider include "the number and type of jobs from which the impaired individual is disqualified, the geographical area to which the individual has reasonable access, and the individual's job expectations and training." *Jasany*, 755 F.2d at 1249 (citing *Black*, 497 F.Supp. at 1100–01).

Generally, exclusion from one position of employment does not constitute a substantial limitation of a "major life activity." A plaintiff's ability to perform other duties in the work place is also relevant. A court may also examine whether a plaintiff can perform or has procured other employment. A court may further consider a plaintiff's ability to perform activities outside of his employment. A plaintiff's participation in recreational activities, for example, may be evidence tending to undermine a finding of disability.

*Fuqua v. Unisys Corp.*, 716 F.Supp. 1201, 1205–06 (D.Minn.1989) (citations omitted).

█ It is well established that an inability to perform a particular job for a particular employer is not sufficient to establish a handicap; the impairment must substan-

tially limit employment generally. *Black*, 497 F.Supp. at 1099–1100. *See, e.g., Fuqua*, 716 F.Supp. at 1206; *Elstner v. Southwestern Bell Telephone Co.*, 659 F.Supp. 1328, 1343 (S.D.Tex.1987), *aff'd*, 863 F.2d 881 (5th Cir.1988); *Diaz v. U.S. Postal Service*, 658 F.Supp. 484, 492 (E.D.Cal.1987); *Carty v. Carlin*, 623 F.Supp. 1181, 1185 (D.Md.1985); *Tudyman*, 608 F.Supp. at 745. The definition of "major life activity" in the regulations "cannot be interpreted ... to include working at the specific job of one's choice." *Daley v. Koch*, 892 F.2d 212, 215 (2nd Cir.1989) (being declared unsuitable for particular position of police officer not substantial limitation of major life activity). We note that, of the cases reviewed by this court that have considered respiratory ailments attributed to the working conditions of the workplace, only one has held the impairment to be a "handicap."[3] However, we do not dismiss Ms. Byrne's claim merely because she is not afflicted with a generally recognized impairment. *See Fuqua*, 716 F.Supp. at 1205 (strained back of limited duration not commonly considered disability). Our determination is based upon the evidence of her particular claim.

Ms. Byrne's testimony indicated that she taught with no health problems for thirteen years, and that, when she stopped teaching, she earned a master's degree and handled two part-time jobs. Ms. Byrne's physician testified that her medical problem could be "fixed"; although she was unable to teach in two schools because of exposure to the fungus,[4] she otherwise was perfectly capable of teaching or of doing other kinds of work. She resumed recreational and social

---

**3.** *Vickers v. Veterans Administration*, 549 F.Supp. 85 (W.D.Wash.1982) (sensitivity to tobacco smoke is "handicap," but no discrimination found because defendant reasonably accommodated plaintiff by separating smokers from him). *But see, e.g., Miller v. AT & T Network Systems*, 722 F.Supp. 633 (D.Or.1989), *aff'd*, 915 F.2d 1404 (9th Cir.1990) (asthma of installer unable to work in extreme temperatures not substantial limitation under state discrimination law); *Wright v. Tisch*, 45 Fair Empl.Prac.Cas. (BNA) 151 (E.D.Va.1987) (allergic reaction to dusty working conditions not

handicap because plaintiff restricted only from unusual environmental conditions of her workplace); *GASP v. Mecklenburg County*, 42 N.C.App. 225, 256 S.E.2d 477 (1979) (under state discrimination law nonsmokers harmed by tobacco smoke not handicapped).

**4.** Ronald A. Harvancik, coordinator of maintenance and operations for the School Board, testified that on two occasions the state conducted tests measuring micro-organisms in schools, and established that the school at which Ms. Byrne taught was "well below any [level of] contamination." Tr. II at 61.

activities, as well, when on her leave of absence.

The evidence, when viewed in light of the factors courts may consider, indicates that Ms. Byrne was unable to work only at two schools, and that she was able to procure other employment and to engage in activities outside of work. There is no evidence that she attempted to transfer back to Franklin School, where she taught for thirteen years without this condition, or to another school in this school district or elsewhere. Because there was plausible evidence, not sheer speculation, that Ms. Byrne's impairment did not substantially limit her ability to work, evidence which might cause reasonable jurors to reach different conclusions, we agree with the district court's assessment that the issue of Ms. Byrne's handicap was one for the jury to determine.

### C. Section 706(8)(B)(ii)

■ Appellant Byrne claims that she is handicapped pursuant to 29 U.S.C. 706(8)(B)(ii), as well, because she has a "record of impairment"[5]: She has been under a doctor's care since December 1983, and was hospitalized in January 1985. Again, she points to the similarity of her circumstances and those reviewed by the Supreme Court in *Arline*, and reminds us that the Supreme Court found that a hospitalization is "more than sufficient" to establish a record of impairment. *Arline*, 480 U.S. at 281, 107 S.Ct. at 1127.

■ It is this court's view that Ms. Byrne's single hospital stay for the administration of allergy tests, unlike Ms. Arline's hospitalization for tuberculosis, does not create a "record of impairment." The Sixth Circuit has also commented that such

an interpretation of *Arline* would be absurd:

> Unfortunately, the [*Arline*] court does not provide any details concerning either the length of Arline's hospitalization or the severity of her affliction. Therefore, unless we read *Arline* as establishing the nonsensical proposition that *any* hospital stay is sufficient to evidence a "record of impairment," which we decline to do, the case offers us little guidance.

*Taylor v. U.S. Postal Service*, 946 F.2d 1214, 1217 (6th Cir.1991). Therefore the evidence of Ms. Byrne's medical history was such that reasonable men and women could reach different conclusions concerning her claim that she had a "record of impairment" under the Act.

### D. Section 706(8)(B)(iii)

■ Ms. Byrne contends that she was also "regarded as having an impairment" by the School Board, and therefore is a "handicapped individual" pursuant to 29 U.S.C. § 706(8)(B)(iii).[6] She points out that the School Board granted her a medical leave for more than two years, transferred her to another school because of her illness, and was aware that Ms. Byrne's condition threatened permanent lung disease. The vocational rehabilitation expert testified at trial that it would be difficult for her to get a teaching position, since an employer would hesitate to take on the legal risk of her further exposure to the fungus.

The School Board responded that it did not know how to regard Ms. Byrne. On the one hand, she did not apply for other teaching positions, and her doctor stated that her recovery would take several years or more. On the other hand, her doctor testified that Ms. Byrne was "perfectly ca-

---

5. The Regulations provide the following definition:

> *Has a record of such an impairment* means has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.

45 C.F.R. § 84.3(j)(2)(iii).

6. The pertinent portion of the regulatory definition is:

> *Is regarded as having an impairment* means (A) has a physical or mental impairment that does not substantially limit major life activities but that is treated by a recipient as constituting such a limitation; (B) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others towards such impairment....

45 C.F.R. § 84.3(j)(2)(iv).

pable of doing all kinds of work," and the insurance company denied her benefits based on its finding that she was able to work. This pertinent part of the school superintendent's letter to Ms. Byrne clearly reflects the confusion about whether to consider her "impaired":

(1) You are either able to work as a teacher, in which case you are absent without justification, or

(2) You are prevented from working as a teacher by a physical condition which will continue for at least the next several years and may be indefinite, in which case you are no longer available for employment by the District.

The School Board carried out Ms. Byrne's requests for changes in her classroom, transfer to another school, and medical leave for more than two years. Now that it has terminated her employment she claims that, by so acting, the Board regarded her as a "handicapped individual."

Courts have uniformly held "that an employer does not necessarily regard an employee as handicapped simply by finding the employee to be incapable of satisfying the singular demands of a particular job." *Forrisi,* 794 F.2d at 934 (citing cases). "The phrase 'is regarded as having such an impairment' means, *inter alia,* 'is treated ... as having such an impairment.'" *Leckelt v. Board of Com'rs of Hosp. Dist. No. 1,* 909 F.2d 820, 825 (5th Cir.1990). It focuses on the effect that the physical or mental condition has on others, and includes within its ambit

those persons who do not in fact have the condition which they are perceived as having as well as those persons whose mental or physical condition does not substantially limit their life activities and who thus are not technically within [the first clause] in the new definition [of "handicapped individual"].

S.Rep. No. 1297, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. 6373, 6389–90.

In this case the School Board never doubted Ms. Byrne's ability to teach, but it did acquiesce to her claim that she was unable to teach in two particular class-rooms. In other words, it treated her as having an impairment because she so defined herself. *Cf. Wright v. Tisch,* 45 FEP Cas. at 153 (plaintiff herself determined that she cannot work in office). The record herein demonstrated that she had been an able teacher, and that she worked capably as a student and in a travel agency and architect's office when she left teaching. Such a record of abilities and employments, when considered along with the Board's response to her leave of absence, could allow a jury reasonably to differ about whether the School Board regarded Ms. Byrne as handicapped.

### E. *Conclusion*

After reviewing all the evidence in the light most favorable to the School Board, as we must, this court holds that the evidence certainly does not permit only a verdict in favor of Ms. Byrne. The record indicates that there was a genuine dispute throughout the trial on all the elements required to be established under the Act. Without establishing first that she was an "individual with handicaps" within the protection of § 504 of the Rehabilitation Act, Ms. Byrne could not succeed in her claim against the School Board. *See Teahan v. Metro–North Commuter R. Co.,* 951 F.2d 511, 517–18 (2nd Cir.1991). As we have shown above, the evidence before this jury clearly could lead reasonable men and women, exercising their judgment in a fair and impartial manner, to reach different conclusions. Therefore we conclude that the district court properly refused Ms. Byrne's motion to direct the verdict.

### IV. MOTION FOR NEW TRIAL

Ms. Byrne raised several challenges to the conduct of trial in her post-trial motions for judgment notwithstanding the verdict and for new trial. The district court denied those motions in its Decision and Order of November 16, 1990. On appeal Ms. Byrne has raised essentially the same issues, and asserts that the errors made by the district court require a new trial.

**568**

### A. Standard of Review

█ A new trial can be granted by the district court "only when the jury's verdict is against the clear weight of the evidence." *Hardin, Rodriguez & Boivin Anesthesiologists, Ltd. v. Paradigm Ins. Co.*, 962 F.2d 628, 640 (7th Cir.1992) (quoting *Davlan v. Otis Elevator Co.*, 816 F.2d 287, 289 (7th Cir.1987)). We review the court's denial of a plaintiff's motion for a new trial for an abuse of discretion. Fed.R.Civ.P. 61; *Equity Capital Corp. v. Kreider Transp. Service, Inc.*, 967 F.2d 249, 253 (7th Cir.1992).

### B. General Verdict

█ Ms. Byrne sought either a directed verdict or specific jury instructions stating that Ms. Byrne was a handicapped individual and that the School Board terminated her solely because of her handicap. By submitting a general verdict to the jury, Ms. Byrne claims, the court erroneously allowed the jury to decide issues of law upon which the court itself should have ruled.

As we discussed above, the issue whether Ms. Byrne was handicapped was a particularized inquiry involving questions of fact that were clearly within the realm of the jury to decide. *See Teahan*, 951 F.2d at 520 (plaintiff's handicap status is question of fact). Just as we refuse to overturn the district court's denial of a directed verdict, so too we will not overturn its denial of specific directions to the jury.

This case is not like a complex patent case that requires special verdicts to articulate the issues of fact subsidiary to the legal questions. *See Roberts v. Sears, Roebuck & Co.*, 723 F.2d 1324, 1340 (7th Cir.1983); *Dual Manufacturing & Engineering, Inc. v. Burris Industries, Inc.*, 619 F.2d 660 (7th Cir.), *cert. denied*, 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90 (1980); *Panther Pumps & Equipment Co. v. Hydrocraft, Inc.*, 468 F.2d 225 (7th Cir. 1972), *cert. denied*, 411 U.S. 965, 93 S.Ct. 2143, 36 L.Ed.2d 685 (1973). We hold that the district court's failure to utilize special verdicts does not constitute an abuse of discretion. *See Roberts, supra.*

### C. Evidentiary Rulings

█ Appellant Byrne challenges two evidentiary determinations at trial: the court's exclusion of medical reports that corroborated Dr. Fink's diagnosis, and its admission of letters written by a vocational consultant. We review a trial court's decisions regarding admissibility of evidence under the abuse of discretion standard. *Tyson v. Jones & Laughlin Steel Corp.*, 958 F.2d 756, 760 (7th Cir.1992); *Fleming v. County of Kane*, 898 F.2d 553, 558 (7th Cir.1990).

In its opinion denying a new trial the district court pointed out that the evidentiary issues were exhaustively, repetitively argued and denied any lack of fairness in the trial. We agree. Our review of the record makes clear that the reports were properly excluded, and that the information in those reports was given to the jury through the testimony of other witnesses and in plaintiff's counsel's closing argument. Likewise it is clear that the letters at issue were appropriately admitted: The court received them in evidence only after satisfying itself that nothing in them should be barred and only after plaintiff's counsel repeatedly and significantly utilized selected portions of the instruments during cross-examination. The court in no way abused its discretion.

### D. Jury Instructions

The appellant also raises challenges to several jury instructions. Our review of jury instructions is limited to the determination of "whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues.... With instructions, we don't pick nits; we examine the whole of what was given and look for overall fairness and accuracy." *Trustees of Indiana Univ. v. Aetna Cas. & Sur. Co.*, 920 F.2d 429, 437 (7th Cir.1990) (quoting *Midcoast Aviation, Inc. v. General Elec. Credit Corp.*, 907 F.2d 732, 741–42 n. 7 (7th Cir. 1990)).

Ms. Byrne contends that the district court committed reversible error in refusing or altering three of her requested jury instructions. First, the instruction regarding the employer's reasonable accommodation failed to include such pertinent points as the social costs of the failure to accommodate her medical condition and the benefits to others of ventilation improvements made to accommodate Ms. Byrne. In two other instructions Ms. Byrne criticizes the court's choice of terminology, arguing that the language she proposed would have been clearer to the jury.

In its Order the district court simply stated:

> The court instructed the jury according to the law and the issues raised by the complaint after receiving little assistance from counsel in the preparation of understandable and legally accurate jury instructions; the same is true as to the form of the verdict. Perhaps the trial was not flawless, but the court is not persuaded that the trial was unfair.

After reviewing the jury instructions as a whole and the challenged ones in particular, this court agrees with the trial court's assessment: The instructions are fair, accurate summaries of the applicable law and are adequately supported by the record. *See Trustees of Indiana University,* 920 F.2d at 437. We therefore conclude that the district court did not commit reversible error in giving them to the jury.

Finding no abuse of discretion in the district court's trial conduct, we uphold its denial of a new trial.

## V. SUMMARY

None of the arguments offered by the appellant provides a basis for disturbing the jury verdict. After reviewing the record in light of the appropriate standards of review, we now hold that the district court did not abuse its discretion in denying Ms. Byrne's motions for a directed verdict or for a new trial. The determinations of the trial court are AFFIRMED.