Muin MUSTAFA, Plaintiff,

v.

CLARK COUNTY SCHOOL
DISTRICT, Defendant.

No. CV–S–95–00016–PMP (RJJ).

United States District Court,
D. Nevada.

Feb. 8, 1995.

Michael W. Dyer, James W. Penrose, Dyer, Lawrence and Cooney, Carson City, NV, for plaintiff.

Mark Ricciardi, S. Scott Greenberg, Kamer & Ricciardi, Las Vegas, NV, for defendant.

## ORDER

PRO, District Judge.

This is a "reasonable accommodation" action under Section 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 794 (1994). Plaintiff allegedly suffers from panic attacks and severe anxiety and distress, and seeks modification of his employment in a manner consistent with his disability.

Presently before the Court is Plaintiff's Motion for Preliminary Injunction (# 7), filed January 30, 1995. Defendant Clark County School District filed its Opposition to Plaintiff's Motion for Preliminary Injunction (# 11) on February 2, 1995. The Court held a hearing on this matter on February 3, 1995.

### I. Background

The Clark County School District ("CCSD" or "District") has employed Mustafa as a mathematics and computer science teacher for 18 years. Most of that time Plaintiff worked as an advanced-placement and college preparatory mathematics and computer science instructor. Mustafa affidavit, para. 2. In January of 1994, however, CCSD suspended Plaintiff without pay and

notified him of the District's intention to terminate his employment based upon allegations of sexual misconduct with a former student of Mustafa's. Mustafa affidavit, para. 4. Pursuant to the collective bargaining agreement, that matter went to arbitration in March of 1994. The arbitrator ruled that the allegations could not be substantiated and Mustafa was reinstated with full back pay. Mustafa affidavit, para. 7.

Mustafa requested to return to teach at Clark High School. Goldman affidavit, para. 13. At this time, however, CCSD was reluctant to place Mustafa back in the school where he had been teaching since criminal charges were still pending and because it was mid-semester. Goldman affidavit, para. 12. Instead, Dr. Goldman, the Assistant Superintendent for Administrative Operations and Staff Relations, placed Mustafa in a temporary consultant position with the CCSD Math Institute. Goldman affidavit, para. 12. CCSD eventually reassigned Mustafa in June 1994 to another area high school to teach basic mathematics, beginning in August. Goldman affidavit, para. 14.

Mustafa did not return to work in his new position. He suffered a recurrence of an earlier foot condition which rendered him unable to walk and necessitated surgery, performed in late August. Mustafa affidavit, para. 12. Mustafa was instructed by his podiatrist not to return to work for five weeks, and he informed the District of this advice. Mustafa affidavit, para. 12. While still on sick leave, Mustafa sought psychiatric and psychological treatment for his anxiety that had developed after the initial allegations were brought against him. He continued to use his accrued sick leave to obtain psychiatric and psychological treatment, providing the District with documentation of the medical necessity of such treatment. Mustafa affidavit, para. 13–14.

Mustafa submitted to an evaluation of his psychological condition by Dr. Culley at the District's request on November 29, 1994. Mustafa affidavit, para. 15. Dr. Culley reported that Mustafa would be ready to return to the classroom, but that there was nothing inappropriate in his extended absence from school on grounds of emotional instability. See letter of Dr. Culley, attached as Exhibit A.

Mustafa's physicians, Dr. Fijman and Dr. Parry, also indicated that Mustafa was able to return to work in an alternative education position. See Exhibit B. However, they understood the term "alternative education" to mean counseling or some other work outside the classroom; they did not understand the term to refer to the District's program for at-risk students (those students who are at risk of dropping out or otherwise cannot cope with regular educational programs).[1] Fijman affidavit, para. 4; Parry affidavit, para. 8.

CCSD assigned Plaintiff to a substitute teaching position until another position became available. Goldman affidavit, para. 21. Recently, however, CCSD assigned Plaintiff to teach basic mathematics at a middle school in Las Vegas, effective at the beginning of the spring semester, in January 1995. Goldman affidavit, para. 24–25.

By this Motion Plaintiff seeks a preliminary injunction directing the District to return him to a position at the Math Institute, or, in the alternative, permit him to work in any other position that does not involve sustained contact with large groups of students.

## II. Discussion

 To obtain a preliminary injunction, Plaintiff must make a clear showing of either: (1) probable success on the merits and the possibility of irreparable injury; or (2) sufficiently serious questions going to the merits to make the case a fair ground for litigation and a balance of hardships tipping decidedly in favor of the party requesting relief. *Chalk v. United States Dist. Court, Cent. Dist.*, 840 F.2d 701, 704 (9th Cir.1988). The Court notes that "[t]hese are not separate tests, but the outer reaches 'of a single continuum.'" *Chalk*, 840 F.2d at 704 (citation omitted).

> [A] moving party need not demonstrate that he risks irreparable injury, but he must at least show that he will suffer a

---

1. In fact, both Dr. Fijman and Dr. Parry stated that Plaintiff was not able to return to teaching in the classroom. Fijman affidavit, para. 4; Mustafa affidavit, para. 16.

degree of hardship that outweighs the hardship facing the opposing party if the injunction is not issued. Similarly, a moving party need not demonstrate that he will succeed on the merits, but must at least show that his cause presents serious questions of law worthy of litigation. *Topanga Press, Inc. v. City of Los Angeles,* 989 F.2d 1524, 1528 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1537, 128 L.Ed.2d 190 (1994).

"These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Diamontiney v. Borg,* 918 F.2d 793, 795 (9th Cir.1990) (citation omitted). Moreover, "[i]n cases where the public interest is involved, the district court must also examine whether the public interest favors the plaintiff." *Fund for Animals, Inc. v. Lujan,* 962 F.2d 1391, 1400 (9th Cir.1992) (citations omitted).

### A. Probability of Success on the Merits

■ In order for a plaintiff to succeed on a Section 504 claim, he must prove:

(1) [t]he plaintiff is a "handicapped person"[2] under the Act;

(2) [t]he plaintiff is "otherwise qualified" for participation in the program;

(3) [t]he plaintiff is being excluded from participating in, being denied the benefit of, or being subjected to discrimination under the program solely by reason of his handicap; and

(4) [t]he relevant program or activity is receiving federal financial assistance.

*Ham v. Nevada,* 788 F.Supp. 455, 456–57 (D.Nev.1992).

### 1. Individual with a Disability

The Act defines "individual with a disability" as follows:

(B) ... [T]he term "individual with a disability" means ... any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.

29 U.S.C. § 706(8)(B) (1994). A mental "impairment" includes "any mental or psychological disorder." 45 C.F.R. § 84.3(j)(2)(i)(B) (1993). Further, working is defined as a major life activity. 45 C.F.R. § 84.3(j)(2)(i) and (ii) (1993); *see Byrne v. Board of Educ., Sch. Dist. of West Allis–West Milwaukee,* 979 F.2d 560, 563 (7th Cir.1992).

■ ·The Rehabilitation Act does not define "substantially limits." In general, however, a disability is "substantially limiting" if it forecloses for the particular plaintiff "generally the type of employment involved" and not merely the singular demands of a particular job. *Forrisi v. Bowen,* 794 F.2d 931, 933 (4th Cir.1986); *Byrne,* 979 F.2d at 565. In making this assessment, a court should consider factors such as the plaintiff's job expectations and training, the number and type of jobs from which the plaintiff is disqualified, and the geographical area to which the plaintiff has reasonable access. *Jasany v. United States Postal Service,* 755 F.2d 1244, 1249 (6th Cir.1985); *Byrne,* 979 F.2d at 565.

■ Plaintiff, in addition to having a bachelor's degree in mathematics, has a master's degree in instructional technology and a Ph.D. in computer science. *See* Mustafa affidavit. In addition, Plaintiff has not indicated that he is precluded from employment in general, but asserts that he is unable to perform as a classroom teacher due to his disability. *See* Complaint (# 1). However, a person is not under a disability if he is prevented from having a particular job. *Byrne,* 979 F.2d at 565 (teacher allergic to fungus in classroom not disabled); *Forrisi,* 794 F.2d at 934 (utility systems repairer and operator with acrophobia not handicapped); *Tudyman v. United Airlines,* 608 F.Supp. 739 (C.D.Cal.1984) (flight attendant whose weight exceeded airline's maximum according to program not handicapped). Finally, it is presumed, although Plaintiff has not indicated, that the geographical area to which

---

**2.** The term "handicapped" has been replaced with "individual with a disability." *See* 29 U.S.C. § 706 (1994).

Plaintiff has reasonable access is the Las Vegas metropolitan area, the area within the CCSD.

These factors indicate that Plaintiff's disability is a barrier to his employment as a teacher. However, they do not indicate that Plaintiff's disability is a significant barrier to employment in general. *See Byrne,* 979 F.2d at 565; *Forrisi,* 794 F.2d at 934. The diagnoses of Plaintiff's own doctors support this contention. *See* Fijman affidavit, para. 6; Parry affidavit, para. 10. In fact, Plaintiff's own request to work at the Math Institute indicates his disability is not a significant barrier to employment in general.

In addition to work, major life activities include functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, and learning. 45 C.F.R. § 84.3(j)(2)(i) and (ii); *Byrne,* 979 F.2d at 563. Plaintiff represents that his condition has affected all of his other major life activities. However, Plaintiff offers no evidence, by affidavit or otherwise, that his disability substantially limits these major life activities. Indeed, his own physician appears to have instructed him to engage in physical activities including golf, bicycling, walking and aerobics. *See* Exhibit 4.

Plaintiff has not indicated a likelihood of success on the merits in terms of his disability substantially impairing a major life activity.

### 2. Otherwise Qualified

■ A plaintiff in a Section 504 case is "otherwise qualified" if he "is able to meet all of a program's requirements in spite of his handicap." *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979). Under the HHS regulations, the inquiry turns on whether the Plaintiff is a qualified handicapped person, defined as someone "who, with reasonable accommodation, can perform the essential functions of the job in question." 45 C.F.R. § 84.3(k)(1) (1993).

[6] A job function is essential where the reason that a position exists is to perform that function. 29 C.F.R. § 1630.2(n) (1994). Classroom teaching is an essential function of

a teacher's job with the District. Goldman affidavit, para. 13. By Plaintiff's own assertion, he cannot teach in a classroom. He has not indicated a likelihood of success on the merits in terms of being otherwise qualified to meet all of a program's requirements in spite of his handicap.

### 3. Discrimination by Reason of Disability

A Section 504 plaintiff must show that he was discriminated against 'solely by reason' of his handicap. *Ham,* 788 F.Supp. at 456–57; *Norcross v. Sneed,* 755 F.2d 113, 117, n. 5 (8th Cir.1985). Plaintiff states that he "believes" that he is a "marked man" since the January 1994 accusations, and further "believes" that "Dr. Goldman, in particular, feels great personal animosity toward [Plaintiff] and has done whatever is within his power to make [Plaintiff's] life intolerable." Mustafa affidavit, para. 23. However, Plaintiff has otherwise failed to show any discrimination on the part of CCSD by reason of his disability. He has not indicated a likelihood of success on the merits in terms of this factor. Accordingly, the Court therefore finds that Mustafa will probably not succeed on the merits. .

### B. Possibility of Irreparable Injury

■ Mustafa asserts that emotional distress and psychological harm constitute irreparable injury and warrant the issuance of a preliminary injunction, and cites the case of *Chalk v. United States District Court* for this proposition. The plaintiff in *Chalk,* a certified teacher for the hearing-impaired, suffered from AIDS. *Chalk,* 840 F.2d at 703. Shortly after his diagnosis, the school district which employed Chalk reassigned him to an administrative position and barred him from teaching in the classroom. *Id.* Chalk sought a preliminary injunction ordering his reinstatement as a teacher. *Id.* The Ninth Circuit in *Chalk* concluded that Chalk did show a possibility of irreparable injury based on being separated from his students and not utilizing his special skills. *Id.* at 709–10. Chalk's irreparable injury arose from being prohibited from doing the type of work for which he was hired. *See id.*

The Court finds that *Chalk* is inapposite to this case. Plaintiff here was hired as a teacher, and is currently employed in that capacity. CCSD is not prohibiting Mustafa from continuing to engage in that work.

Instead, Mustafa's allegations of irreparable injury arise from being forced to go back to work as a teacher despite a diagnosed panic disorder. Mustafa asserts that he is unable to perform work as a teacher, and offers the affidavits of his treating psychologists and psychiatrists that continued teaching will result in panic attacks. Parry affidavit, para. 10; Fijman affidavit, para. 6.

However, Lois Venger, the Principal at Gibson Middle School, to which Plaintiff is currently assigned as a math instructor, states that Mustafa has never appeared to be distressed and has not complained of problems in the classroom or in dealing with students. Venger affidavit, para. 12. In addition, Mustafa has never utilized school procedures to follow in case of teacher illness or other problems. Venger affidavit, para. 7–8.

In addition, Dr. Goldman states that the District has never received any reports from students, parents, other teachers or principals that Mr. Mustafa was in any distress or had any difficulty doing his job as a classroom teacher, including that period when Mr. Mustafa was assigned as a substitute teacher. Goldman affidavit, para. 25.

While the Court is sympathetic to Mr. Mustafa's condition, he has not indicated the required degree of irreparable harm consistent with the Court's findings regarding the possibility of success on the merits. *See Diamontiney*, 918 F.2d 793, 795 (9th Cir. 1990). The Court therefore finds that Plaintiff has not shown a possibility of irreparable injury.

## C. Balance of Hardships

■ Even assuming Plaintiff raises serious questions as to the merits of his claim, Plaintiff still must show that the balance of hardships tips decidedly in his favor. In evaluating an employer's claim of hardship, the Court should consider the following factors:

(1) The overall size of the recipient's program with respect to number of employees, number and type of facilities, and size of budget;

(2) The type of the recipient's operation, including the composition and structure of the recipient's workforce; and

(3) The nature and cost of the accommodation needed.

45 C.F.R. § 84.12(c) (1993). Mustafa asserts that the fact that the District, besides being one of the largest school districts in the country and the largest employer in the State of Nevada, has previously assigned Mustafa to a position outside the classroom mandates a finding that the District will not suffer hardship.

However, the District asserts that it will suffer hardship if the provisions of the collective bargaining agreement are bypassed through issuance of a preliminary injunction. Goldman affidavit, para. 27. Under the collective bargaining agreement, Mustafa has the right to grieve and have resolved through binding arbitration various issues including the use of sick days. Goldman affidavit, para. 26. Issuing a mandatory preliminary injunction, asserts the District, would not be in the best interests of the students or the teachers in the District. The Court finds that the balance of hardships does not tip decidedly in Plaintiff's favor.

■ Mustafa finally asserts that a preliminary injunction is intended to preserve the status quo pending a determination of the action on its merits. *See Chalk*, 840 F.2d at 704. The status quo in this context is the "last uncontested status" of the parties. *Sullivan v. Vallejo City Unified School District*, 731 F.Supp. 947, 954 (E.D.Cal.1990). Mustafa asserts that the "last uncontested status" of the parties was the status they occupied when Mustafa was at the Math Institute. However, according to CCSD this placement was only temporary; furthermore, it was caused by the mid-semester resolution of the allegations against Mr. Mustafa and the inability to locate a permanent teaching position at that time. Goldman affidavit, para. 12. The Court finds that the last uncontested status of the parties places Mr. Mustafa as a classroom teacher. As such, Plaintiff re-

quests a mandatory preliminary injunction. *See Sullivan,* 731 F.Supp. at 954. Mandatory injunctions "are not granted unless extreme or very serious damage will result and are not issued in doubtful cases." *Anderson v. United States,* 612 F.2d 1112, 1115 (9th Cir.1979) (citation omitted). The facts and the law do not favor Mr. Mustafa.

IT IS THEREFORE ORDERED THAT Plaintiff's Motion for Preliminary Injunction (# 7) is DENIED.