Estella **PRITCHARD**, Plaintiff,

v.

**MacNEAL HOSPITAL**, Defendant.

No. 95 C 6192.

United States District Court,
N.D. Illinois,
Eastern Division.

April 21, 1997.

Michael H. Cole, Chicago, IL, for plaintiff.

Lawrence M. Cohen, Davi Lynn Hirsch, Fox and Grove, Chartered, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Plaintiff Estella Pritchard ("Pritchard") brought this action pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, alleging that she is disabled and that defendant, MacNeal Hospital ("MacNeal"), terminated her because of her disability. Before the court is MacNeal's motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, and Pritchard's motion to strike MacNeal's summary judgment evidence. For the reasons that follow, the court denies the motion to strike and grants the motion for summary judgment.

## I. BACKGROUND [1]

In October 1969, Pritchard was hired as a housekeeper by MacNeal Hospital, and remained in this position until she was fired on March 30, 1995. Pritchard's duties were those of general housekeeping, which included washing walls and furniture, making beds, mopping floors, cleaning bathrooms, and doing detail work, such as removing lint and dust that was not immediately visible, but which, if not properly removed from operating rooms, could compromise patient safety. Pritchard's position required constant standing and walking, the ability to lift and carry light weights, and the ability to push cleaning carts. Pritchard received training for her position when she was first hired and also received additional training when she was assigned to new areas in the hospital.

### A. Pritchard's injuries

In October 1990, after she had completed her shift but before leaving the hospital, Pritchard slipped and fell, hurting her left knee and leg. Pritchard did not seek medical attention immediately, but went home. The following day she complained to her supervisor, John Wesolowski, that she was in pain. Wesolowski prepared an incident report and told Pritchard to go to Employee Health. Pritchard was diagnosed as having

---

1. The following facts come from the parties' Local Rule 12(M) and (N) statements of material facts and accompanying affidavits, depositions, and exhibits.

a sprained knee, but was told that she was still able to work and did not require any time off. Pritchard returned to her duties and worked the remainder of her shift.

In the days and weeks following her injury, Pritchard found it difficult and painful to get down on her hands and knees to clean scuff marks off the floor and to wash baseboards. In order to avoid this pain, Pritchard adjusted her method of cleaning, finding ways to use a mop to accomplish these tasks. Pritchard recalls telling Wesolowski that she was in some pain on three separate occasions, but she did not tell him that she was unable to do her job. Pritchard's job responsibilities remained unchanged.

Approximately seventeen months after her injury, Pritchard began seeing doctors for the pain she was experiencing in her left leg and knee. In March 1992, Pritchard was diagnosed by Dr. John Martell as having osteoarthritis, which is the loss of cartilage in the knee leading to progressive pain and deformity. Dr. Martell explained that the only "cure" available for osteoarthritis is total knee replacement; however, he did not recommended this procedure for Pritchard because of her young age and severe obesity and the heavy walking requirements of her job. Dr. Martell treated Pritchard with pain medications and cortisone shots, and continued to recommend that she lose weight to lessen her symptoms.

In May 1993, Pritchard slipped and fell again, this time while she was in MacNeal's cafeteria. Pritchard was taken to the emergency room and diagnosed as having a sprained left knee. A few hours after the injury Pritchard was up and walking around; however, she was sent home and told to contact Employee Health the next day. For the next six days Pritchard reported to Employee Health and was sent home by the reviewing physician. Pritchard submitted papers on each of these days to her supervisor advising him that she was unable to work. At the end of the six days Pritchard's doctor told her she could return to work on light duty, but did not place specific restrictions on the duties she could perform. Pritchard returned to work and performed all the duties of her job as she had in the past.

Initially, Pritchard limped and had some difficulty walking, but was able to walk better in a few weeks, once her sprain healed. While she required no further medical treatment for the sprain or the assistance of a cane or wheelchair, Pritchard still occasionally wraps her knee. Pritchard continued to see Dr. Martell and other doctors periodically for symptoms relating to her osteoarthritis.

## B. *Pritchard's job performance between 1990 and 1995*

For the period from September 5, 1990, through September 5, 1991, Pritchard's supervisor, Ron Harrison, rated her overall performance as "satisfactory." Although the evaluation was generally positive, it recommended that Pritchard improve her detail work, including dusting and making sure equipment was free of streaks and chemical build-up. Almost a year later, in August 1992, Harrison sent an inter-office memorandum to Luis Castillo, manager of the Environmental Services Department, outlining a number of performance deficiencies he had recently addressed with Pritchard. The deficiencies included dust and blood left on overhead fixtures, dust behind mirrors and on window ledges, and improperly cleaned cabinet tops, trash cans, baseboards, and walls.

Harrison rated Pritchard's performance for the period between September 5, 1991, and September 5, 1992, as "marginal." Pritchard was given 90 days to improve the quality of her work. Pritchard did improve, and Harrison rated her performance as "satisfactory" for the period between September 5, 1992, and September 5, 1993. While Harrison noted that Pritchard's performance had been good during the past year, he also noted that she still needed to be aware of dusting ledges and fixtures.

On June 29, 1994, Pritchard received a written warning for poor performance. The warning included a list of deficiencies focusing on numerous incidents of blood and dust found in birthing rooms, and improperly cleaned equipment, walls, and counter tops in the nursery. Fabio Cenci, who replaced

Harrison as Pritchard's supervisor in March 1994, rated her performance as "marginal" for the period between September 5, 1993, and September 5, 1994. Pritchard again was given 90 days to improve her performance to avoid being fired.

Cenci wrote a memorandum on November 2, 1994, to Pritchard's file regarding her continued performance problems, referring specifically to the serious deficiencies he observed during an inspection on November 1, 1994. On November 4, 1994, Cenci wrote a memorandum directly to Pritchard discussing the areas of concern raised by his November 1 inspection, his attempts at coaching her though weak areas, and her repeated tardiness, which had just come to his attention. Cenci emphasized the seriousness of her probationary status and the potential for termination if she failed to improve.

On November 11, 1994, Cenci wrote another memorandum to Pritchard regarding complaints he had received from Maureen Kosieniak, the manager of labor and delivery, and Dr. Santilli. Both complained of Pritchard's unacceptable work performance, referring to inadequate cleaning and dusting and the serious risk to patients that such improperly cleaned rooms presented. Cenci decided he could no longer allow Pritchard to work in labor and delivery; however, instead of terminating her, he reassigned her to a floating housekeeping position where she would have an opportunity to improve and meet the standards identified in his November 4, 1994, memorandum. On November 16, 1994, Cenci gave Pritchard her first written warning for attendance problems.

On December 5, 1994, the end of Pritchard's 90–day probationary period, Cenci again rated her as "marginal." Instead of firing her, however, Cenci extended Pritchard's probationary period an additional 90 days, warning her that in order to avoid termination she would have to show dramatic improvement. Subsequent to this evaluation, Pritchard contacted Anthony Rea, the Di-

rector of Human Resources at MacNeal. Pritchard complained that Cenci was "harassing" her by changing her schedule, not giving her "holiday pay," looking for her during her lunch breaks, and "picking" on her for not doing her work. No issues regarding her work performance were raised at the meeting. Rea's subsequent investigation of Pritchard's complaint found that Cenci's evaluations of her performance were corroborated by staff members in labor and delivery.

On February 12, 1995, following a restructuring of the housekeeping department, Pritchard was assigned to the psychiatry department, where she reported directly to the nurse manager of the department, Donna Leveque. While her job title and supervisor changed, Pritchard's duties remained essentially the same. At the end of Pritchard's second 90–day probationary period, Cenci and Leveque evaluated Pritchard's performance. Cenci noted that although Pritchard had made some improvements, her performance remained deficient in many respects. Leveque also found Pritchard's performance deficient, most notably in that Pritchard failed to follow critical procedures with respect to the disposal of sharp containers. Based on this evaluation, Leveque decided it was necessary to fire Pritchard. Rea supported Leveque's decision, and they both met with Pritchard on March 30, 1995, at which time they informed Pritchard that she was fired.

## II. DISCUSSION

### A. Motion to strike

The court addresses Pritchard's motion to strike summary judgment evidence first because it is necessary to establish what materials are properly before the court in support of MacNeal's motion for summary judgment. Pritchard asks the court to strike most of the documents supporting MacNeal's motion as inadmissible evidence.[2] The court finds

---

**2.** Pritchard also contends that MacNeal's entire motion should be stricken for lack of proper notice pursuant to Federal Rule of Civil Procedure 56(c), which requires that a "motion ... be served at least 10 days before the time fixed for

the hearing." Pritchard's contention is without merit because the court allowed the parties substantially more than 10 days to file their written briefs, affidavits, and other exhibits, and these submissions constituted the "hearing" to which

Pritchard's vague and unsupported accusations of evidentiary inadmissibility without merit. Therefore, Pritchard's motion to strike MacNeal's summary judgment evidence is denied.

### 1. Employee evaluations, notices of warning, and supervisor memoranda

Pritchard first seeks to strike the yearly and 90–day employee evaluations prepared by her supervisors during the last five years of her employment. She further seeks to strike the two notices of warning prepared by her supervisors. Last, Pritchard seeks to strike memoranda created by her supervisors articulating their perceptions of her performance problems. Pritchard bases her claims of inadmissibility on a variety of evidentiary rules, including authentication, hearsay, and relevancy rules. The court finds that Pritchard's employee evaluations, notices of warning, and performance memoranda are relevant, properly authenticated, and not barred as hearsay.

■ Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED.R.EVID. 401. Pritchard's periodic employee evaluations, official written warnings, and performance memoranda are clearly relevant to MacNeal's defense in this case—that it terminated Pritchard not because she was disabled, but for poor performance. Such evidence is relevant under Rule 401 because it has a tendency to make MacNeal's defense more probable.

■ As for authentication, Rule 901 provides that authentication "is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims." FED.R.EVID. 901. MacNeal claims the items at issue are evaluations, warnings, and memoranda prepared by Pritchard's supervisors regarding her job performance. Pritchard herself effectively authenticates the documents by admitting in her deposition to receiving, discussing, and signing the documents. Pritchard claims that she disagreed

Rule 56(c) refers. Thus, Pritchard received time-

with the substance of the documents. However, for authentication purposes, the substance of the documents is irrelevant because the evaluations, warnings, and memoranda clearly are what they purport to be—Pritchard's supervisor's evaluations of her performance.

■ Last, Rule 803(6) creates an exception to the hearsay rule for "[r]ecords of regularly conducted activity." FED.R.EVID. 803(6). "A memorandum [or] report, . . . in any form, of acts, events, conditions, [or] opinions, . . . made at or near the time by . . . a person with knowledge, if kept in the course of regularly conducted business activity" is an exception to the hearsay rule. *Id.* The employee evaluations, warnings, and memoranda at issue are reports made by Pritchard's supervisors, persons with direct, personal knowledge of her performance. These records contain the conditions and opinions reported by Pritchard's supervisors. MacNeal, like most employers, has a regular practice of using supervisory evaluations to document employee performance. Consequently, Pritchard's evaluations, warnings, and performance memoranda are records of acts, events, conditions, and opinions regarding Pritchard's performance, made by persons with knowledge of Pritchard's performance and kept in the course of regularly conducted business activity. Therefore, they are excepted from the rule against hearsay by Federal Rule of Evidence 803(6).

Accordingly, the court denies Pritchard's request to strike the portions of MacNeal's motion for summary judgment and Local Rule 12(M) statement relying on the evaluations, warnings, and memoranda regarding Pritchard's performance.

### 2. Statements made by MacNeal employees

Pritchard also seeks to strike paragraph 4 of the Declaration of Donna Leveque because it contains hearsay; is not authenticated; contains hearsay within hearsay; and fails to comply with Federal Rule of Civil Procedure 56(e). Paragraph 4 states:

ly notice of MacNeal's motion.

While Pritchard reported to me, she had a number of serious performance deficiencies. The document entitled "Feedback from February 12, 1995 through March 5, 1995," which is attached to Pritchard deposition exhibit 18 and has been bates stamped MH0007, is a true and correct copy of a document I prepared which summarized Pritchard's performance problems. In my opinion, the performance problems Pritchard had already experienced during the short period she reported to me precluded her from performing effectively in the Psychiatry unit.

Pritchard fails to identify anything specific to support her claims that this paragraph contains inadmissible evidence. On its face, the paragraph does not appear to contain hearsay. Pritchard does not identify what she believes is hearsay, and the court sees nothing that looks like hearsay. Furthermore, the document referenced in this paragraph has no authentication problem for the reasons discussed in section II.A.1., above. Finally, paragraph 1 of Leveque's statement states that, in accordance with Rule 56(e), Leveque "would be competent to testify to the facts set forth in this affidavit of my own personal knowledge." Without more specific allegations by Pritchard, the court is unable to identify any basis for Pritchard's belief that paragraph 4 of Leveque's declaration violates Rule 56(e). Pritchard's request to strike this paragraph is denied.

Pritchard also requests that the court strike as hearsay paragraph 78 of defendant's Rule 12(M) statement of material facts. Paragraph 78 of MacNeal's 12(M) statement states:

Pritchard did not inform MacNeal's Human Resource Department at anytime that she suffered from any disability or request any disability accommodation. Rea dep., pp. 53–54, 57–58, 103–104. Rea was never advised by any supervisor that Pritchard has any disability or needed any accommodation. Rea dep., p. 104.

Again, Pritchard fails to explain why this statement contains hearsay. Rea is the director of human resources for MacNeal, and was speaking from his own knowledge and experience. Moreover, Rea was testifying about his lack of information, not about what Pritchard or anyone else said to him. Therefore, Pritchard's request to strike paragraph 78 of MacNeal's Rule 12(M) statement is denied.

In sum, Pritchard's motion to strike, which borders on the frivolous, is denied.

### B. *Motion for summary judgment*

Under Federal Rule of Civil Procedure 56(c), a moving party is entitled to summary judgment as a matter of law if the record shows that there is "no genuine issue as to any material fact." FED.R.CIV.P. 56(c). The moving party has the burden of proving the absence of a genuine issue of material fact through the affidavits, pleadings, depositions, and answers to interrogatories. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for the party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

Once the moving party has met its burden, the party opposing the motion may not rest upon the mere allegations or denials in its pleadings; instead, it must come forward with specific evidence demonstrating that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256–57, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir.1989). Summary judgment is proper "when the opposing party is unable to make a showing sufficient to prove an essential element of a case on which the opposing party bears the burden of proof." *Common v. Williams*, 859 F.2d 467, 469 (7th Cir.1988). In ruling on a motion for summary judgment, the evidence is viewed in a light most favorable to the nonmoving party. *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir.1989).

Pritchard's claim is based on section 504 of the Rehabilitation Act, which makes it unlawful for the recipient of federal funds to discriminate against an otherwise qualified disabled individual based on that person's

disability. *Byrne v. Board of Educ., School of West Allis–West Milwaukee,* 979 F.2d 560, 563 (7th Cir.1992). A plaintiff can prove disability discrimination through either direct evidence of discrimination or the indirect burden-shifting method of proof established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *DeLuca v. Winer Indus., Inc.,* 53 F.3d 793, 797 (7th Cir.1995) (citing *McDonnell Douglas,* 411 U.S. at 802–03, 93 S.Ct. at 1824).[3] Pritchard has presented no direct evidence of discrimination, so she must rely on the *McDonnell Douglas* burden-shifting analysis.

Under the burden-shifting analysis, Pritchard first must establish a *prima facie* case of disability discrimination. *See DeLuca,* 53 F.3d at 797 (citing *McDonnell Douglas,* 411 U.S. at 802–03, 93 S.Ct. at 1824). If Pritchard establishes a *prima facie* case of discrimination, the burden shifts to MacNeal to articulate a legitimate, nondiscriminatory reason for its decision to terminate the plaintiff. *See id.* If MacNeal can articulate a legitimate and nondiscriminatory reason for firing Pritchard, the burden then shifts back to Pritchard to show that MacNeal's proffered reason is merely a pretext for its actual reason—discrimination. *See id.* Notwithstanding this burden-shifting, the ultimate burden of persuasion remains always with Pritchard. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507–08, 113 S.Ct. 2742, 2747–48, 125 L.Ed.2d 407 (1993).

### 1. Whether Pritchard can establish a *prima facie* case of disability discrimination

In order to establish a *prima facie* case of discrimination under section 504, Pritchard must show that (1) she is disabled within the meaning of the Act; (2) she is "otherwise qualified" for the job in question; (3) she suffered an adverse employment decision solely because of her disability; and (4) her employer is the recipient of federal funds.

*See* 29 U.S.C. § 794; *Byrne,* 979 F.2d at 563; *Grzan v. Charter Hosp. of Northwest Indiana,* 104 F.3d 116, 119 (7th Cir.1997). MacNeal does not contest the last element, that it receives federal funds. However, it contends that Pritchard otherwise cannot establish a *prima facie* case of disability discrimination. Consequently, Pritchard must show that she has a disability; that despite her disability she is qualified to be a housekeeper; and that MacNeal terminated her employment solely because of her disability.

#### a. *Whether Pritchard has a disability*

To make out a *prima facie* case of disability discrimination, Pritchard must meet the threshold burden of establishing that she has a disability, as that term is defined by the statute. *Roth v. Lutheran Gen. Hosp.,* 57 F.3d 1446, 1454 (7th Cir.1995); *Hamm v. Runyon,* 51 F.3d 721, 724 (7th Cir.1995). The Rehabilitation Act defines a person with a disability as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(8)(B); *see also* 29 C.F.R. § 1613.702(a). The regulations further provide that major life activities are "functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working," 29 C.F.R. § 1630.2(i), and that the phrase "substantially limits" means the "[in]ability to perform ... or a significant[ ] restrict[ion] as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to ... [an] average person." 29 C.F.R. § 1630.2(j)(1); *see also Roth,* 57 F.3d at 1454. The determination of whether a person is disabled within the meaning of the Act "is an individualized inquiry, best suited to a case-by-case analysis." *Byrne,* 979 F.2d at 565. The factors a court should consider in making its determination include "the nature and severity of the impairment; [t]he

---

**3.** Although *DeLuca* involved discrimination under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213, section 504 of the Rehabilitation Act provides that "the standards relevant to prove whether this section has been violated ... shall be the same standards applied under Title I of the [ADA]." 29 U.S.C. § 794(d); *see also Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 932–33 (7th Cir.1995) (language of the Rehabilitation Act substantially identical to the language of the ADA).

duration or expected duration of the impairment; and [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2).

■ Pritchard's complaint refers to injuries she incurred as a result of falling in May 1993 as the basis of her disability claim. Pritchard's injury was diagnosed as a sprained left knee, for which she missed six days of work. Pritchard returned to work on "light duty" for a short time, still in pain and limping for a few weeks following her injury. (Pritchard Dep. at 57–63, 100–14.) Pritchard provides no evidence to indicate that her sprain was permanent or that she received continuing care for the sprain. In *Vande Zande v. Wisconsin Dep't of Admin.*, the Seventh Circuit recognized that "[i]ntermittent episodic injuries are not disabilities, the standard example being a broken leg." 44 F.3d 538, 544 (1995). Pritchard's injury falls squarely within this example: a sprain, like a broken leg but even less serious, is a temporary injury. Therefore, Pritchard's sprained knee does not qualify as a disability.

■ Pritchard's complaint further alleges in paragraph 23 that she was "given [a] permanent impairment rating for both her left leg and left fool on August 16, 1993." This would apparently satisfy the "having a record of having such an impairment" prong of the statute. Unfortunately, Pritchard has failed to provide any evidence to support her allegation. She has provided no documentation whatsoever regarding a "permanent impairment rating," nor has she identified who or what agency gave her such a rating.

In order to avoid summary judgment, Pritchard may not rest on the mere allegations in her complaint, but must affirmatively demonstrate through a specific factual showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256–57, 106 S.Ct. at 2514. Pritchard does not meet this standard by alleging a permanent impairment rating without any evidence in support of the claim. Moreover, during her deposition, when questioned about the permanent impairment rating, Pritchard failed to remember anything except "[getting] a shot" from her doctor. (Pritchard Dep. at 124.) With no evidence to

support her allegation, Pritchard could not possibly convince a reasonable jury that she was given a permanent impairment rating that constituted a record of having an impairment. Therefore, Pritchard has failed to establish a disability on this ground.

Despite the shortcomings of her complaint, in response to MacNeal's motion for summary judgment, Pritchard has provided an additional reason upon which this court may conclude that she has a disability. Pritchard was diagnosed in 1992 as having osteoarthritis in her left knee, and she has provided substantial medical documentation with respect to this diagnosis. Osteoarthritis is a permanent impairment, the only "cure" being total knee replacement. Pritchard was not recommended for this procedure because she was too young, severely obese, and had a job with heavy walking requirements. Osteoarthritis, which in Pritchard's case is the loss of cartilage in her knee, qualifies as a physical impairment. The next question is whether Pritchard's form of osteoarthritis "substantially limits a major life activity." Although her response does not specifically state what major life activity is substantially limited by her osteoarthritis, the court assumes Pritchard is referring to either walking or working.

Because Pritchard would have the burden at trial of proving that her osteoarthritis substantially limits her ability to walk, the court looks to what Pritchard has brought forth as evidence of such a substantial limitation. First, Pritchard has provided numerous medical documents regarding injuries and doctor visits in relation to Pritchard's left leg, knee, and ankle. None of these documents states that Pritchard was or is unable to walk or needs the assistance of a cane or wheelchair. The only medical care Pritchard apparently received was pain medication and periodic cortisone shots to relieve her symptoms associated with osteoarthritis. Moreover, Pritchard's doctor, who diagnosed her osteoarthritis, knew that her job required heavy walking, and yet there is no evidence to suggest he felt Pritchard was unable to meet that requirement.

Pritchard relies on the "light duty" recommendation that she received following her

sprained knee injury in 1993 as evidence that her ability to walk was limited. Even assuming that during the weeks following her injury she was substantially limited in her ability to walk, Pritchard has not brought forth any evidence to show that she was permanently limited in her ability to walk. In order to be substantially limited in her ability to walk, the limitation must be permanent. *See Vande Zande,* 44 F.3d at 544. Furthermore, additional evidence refutes any inference that her inability to walk was permanent, in that when Pritchard saw her doctor in August 1993, he wrote in her records that "her left knee is not symptomatic today." (Pritchard Dep. Ex. 4 at 0256.)

Pritchard also relies on her own evaluation of her ability to walk, which is "not so good," although she admits that she can and does walk. The Rehabilitation Act regulations and case law interpreting them are quite clear with respect to the meaning of "substantially limits." In order to support a claim that a major life activity is substantially limited by an impairment, the plaintiff must prove a complete inability to perform or significant restriction as to the manner or duration under which she can perform the activity in question, as compared to an average person. 29 C.F.R. § 1630.2(j)(1); *see also Roth,* 57 F.3d at 1454 ("[N]ot every impairment … is a substantially limiting impairment"). Pritchard does not require the use of a cane or wheelchair, and while she claims that she sometimes limps, there is no indication that this is a regular occurrence. Thus, Pritchard's knee problems do not substantially limit her ability to walk.

■ An alternate theory for Pritchard is that her osteoarthritis substantially limits her ability to work. Pritchard claims that she is unable to perform those aspects of her job that require her to get down onto her knees. (*See, e.g.,* Pritchard Dep. at 81–82, 117–19.) However, Pritchard also admits that at all relevant times she was fully capable of performing the essential requirements of her job. (*See, e.g., id.* at 71, 120.) In fact, Pritchard adjusted her cleaning technique in such a way as no longer to require that she get down onto her knees. (*Id.* at 81–82, 117–19.)

In addition, "[i]t is well established that an inability to perform a particular job for a particular employer is not sufficient to establish a [disability]; the impairment must substantially limit employment generally." *Byrne* 979 F.2d at 565; *see also* 29 C.F.R. § 1630.2(j)(3)(i). Pritchard currently is seeking not only other employment in general, but other housekeeping employment at Chicago-area hospitals. (Pritchard Dep. at 132–34.) Thus, Pritchard's own testimony precludes the possibility that a reasonable jury would find that Pritchard's osteoarthritis substantially limits her ability to work.

Accordingly, Pritchard has failed to establish that she has a disability under the Rehabilitation Act, and therefore has failed to establish a crucial element of her *prima facie* case.

b. *Whether Pritchard is otherwise qualified for the job of housekeeper*

■ In addition to having a disability within the meaning of the Rehabilitation Act, a person claiming disability discrimination must be "otherwise qualified" for her position. 29 U.S.C. § 794. An "otherwise qualified" person is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such an individual holds or desires." *Hunt–Golliday v. Metropolitan Water Reclamation Dist. of Greater Chicago,* 104 F.3d 1004, 1011–12 (7th Cir.1997). An employer is responsible for making reasonable accommodations to job requirements for the "known physical or mental limitations" of a disabled employee, as long as such accommodations do not impose an undue hardship on the employer. *Id.* at 1012.

Both parties agree that the essential functions of Pritchard's position were those of general housekeeping—washing walls and furniture, making beds, mopping floors, cleaning bathrooms, and doing detail work—and all of which required constant standing and walking. Pritchard claims that she was qualified and capable of performing these essential functions, but that she had difficulty in doing so because of her disability. MacNeal claims that she was not otherwise quali-

fied for her position because she was unable to meet the minimum performance standards required of her position.

While the parties dispute whether Pritchard ever requested an accommodation, Pritchard does not claim that had she been given reasonable accommodations her performance would have been better, nor does she even articulate what accommodations she required to allow her to perform satisfactorily. In fact, in her deposition, Pritchard testified that after her October 1990 fall, she went back to work the day after her fall, always performed all of her duties, and never told anyone that she could not perform all of her duties. (Pritchard Dep. at 71.) The only times she asked for help with her work were when there were a lot of baby deliveries. (*Id.* at 77–79.) While it was hard for Pritchard to bend and get down on her knees, she compensated for her difficulty by using her mop to clean the baseboards. (*Id.* at 81–82.)

Similarly, after her May 1993 injury, Pritchard did not tell her supervisor that she could not do her job. (*Id.* at 115–16.) The only times she told him that she needed help were when there were a lot of baby deliveries. (*Id.* at 116.) While she told her supervisor about her knee problems, and told him that she could not get down on her knees to clean the baseboards, her supervisor knew that she was able to use her mop to clean the baseboards and use the mop or bend at the back to clean other low-level objects. (*Id.* at 117–19.) Finally, Pritchard testified that despite her knee problems, she did everything she was required to do and never refused to perform her job. (*Id.* at 120.)

Thus, notwithstanding what Pritchard claims in her pleadings, her deposition testimony indicates that Pritchard did not explicitly request any accommodation because of her knee problems, and further, did not need any accommodation because she adjusted her cleaning techniques to compensate for her knee problems.

Moreover, Pritchard has failed to provide any evidence to show the connection between her knee injuries or osteoarthritis and the substandard performance ratings given to her by her supervisors. In her deposition, Pritchard never attributed her performance deficiencies to her knee problems. Instead, she essentially denied that she had performance deficiencies and claimed that she did her job. (*See id.* at 170–73, 185–92, 210–15.)

Accordingly, Pritchard has not established that she was "otherwise qualified" for the job of housekeeper because she has not shown that regardless of her disability, and with or without accommodations, she was able to meet the performance standards set for her position by MacNeal.

### c. *Whether Pritchard was fired solely because of her disability*

■ Pritchard's final burden in establishing a *prima facie* case of discrimination is to show that she was fired solely because of her knee problems. *Byrne,* 979 F.2d at 563. Pritchard has provided no such link.

Pritchard has provided no evidence that MacNeal fired her because of her knee problems. Moreover, she has provided no evidence that her poor performance was caused by her knee problems. As the court noted in subsection b, above, in her deposition, Pritchard acknowledged that she received repeated warnings about her performance, but did not attribute her alleged performance deficiencies to her knee problems. Instead, Pritchard essentially denied that she had any performance problems, and stated that she did her job.

Thus, Pritchard has provided the court with no evidence that MacNeal fired her for any reason related to her alleged disability. For this reason, Pritchard has not established this element of her *prima facie* case. Since Pritchard has failed to present sufficient evidence to establish a *prima facie* case of disability discrimination, the court need not consider the remainder of *McDonnell Douglas'* burden-shifting analysis, but it will.

### 2. Whether MacNeal has articulated a legitimate and nondiscriminatory reason for firing Pritchard

■ If Pritchard had sustained her burden of establishing a *prima facie* case of disability discrimination, the burden then would shift to MacNeal to articulate a legiti-

mate and nondiscriminatory reason for its decision to fire Pritchard. It has done so.

■ Generally, an employee may be fired for "any reason ... not proscribed by a Congressional statute." *Kahn v. United States Secretary of Labor*, 64 F.3d 271, 279 (7th Cir.1995) (citation omitted). Here, Mac-Neal has stated that it fired Pritchard for her poor performance. Nowhere does Congress proscribe firing someone for poor performance. In fact, "[e]mployers fire people every day[,][and][p]erhaps the most common criterion for choosing whom to fire is which employees perform a job better or worse than others." *Hedberg v. Indiana Bell Telephone Co.*, 47 F.3d 928, 934 (7th Cir.1995). Thus, MacNeal has met its burden of proffering a legitimate and nondiscriminatory reason for firing Pritchard.

3. **Whether Pritchard can show that MacNeal's proffered reason for firing her is a pretext for discrimination**

Since MacNeal has sustained its burden of proffering a legitimate and nondiscriminatory reason for firing Pritchard, the burden shifts back to Pritchard to show that MacNeal's proffered reason is merely a pretext for discrimination. Pretext "means a lie, specifically a phony reason for some action." *Russell v. Acme–Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995). Thus, it is not enough for Pritchard to allege that MacNeal's decision was wrong; *see McCoy v. WGN Continental Broad. Co.*, 957 F.2d 368, 373 (7th Cir.1992); she must show that MacNeal is lying about firing Pritchard because of her unsatisfactory performance. *See Russell*, 51 F.3d at 68.

■ Pritchard's self-serving claims that she was performing her job duties adequately are insufficient to counter MacNeal's assessment of her performance. *See Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1460 (7th Cir.1994) (citations omitted). Pritchard can show that, or at least create a question of fact about whether, MacNeal's reason for firing her was mere pretext by specifically refuting facts that allegedly support Mac-Neal's claim of performance deficiencies. *See id.* However, she has identified nothing

to indicate that MacNeal's proffered reason for firing her is a pretext for discrimination.

■ The only evidence that can possibly support an inference of pretext is Pritchard's claim that her supervisor, Cenci, "picked on" and "harassed" her. However, Pritchard concedes that he did the same to other employees, (Pritchard Dep. at 209), which defeats the inference that Cenci was discriminating against Pritchard. Moreover, both Cenci and Rea told Pritchard that nurses and doctors had complained about her cleaning, (Pritchard Dep. at 195, 209–10, 243, 245), which supports the inference that Pritchard's performance really was deficient. In addition, instead of firing Pritchard immediately after her 90–day probation period ended in December 1993, Cenci gave her an additional 90 days in which to improve her performance. This action by Cenci also undermines an inference of pretext, since it allowed Pritchard a chance to improve and remain a MacNeal employee. Finally, it was not Cenci, but Leveque and Rea, who ultimately decided to fire Pritchard. Thus, even if Cenci harbored some ill will towards Pritchard because of her knee problems or for any other reason, Cenci was not the one to fire Pritchard.

Thus, Pritchard has "failed utterly to rebut [MacNeal's] valid, nondiscriminatory reasons" for firing her. *Roth*, 57 F.3d at 1459. MacNeal, on the other hand, has presented plenty of evidence showing that it fired Pritchard not because of her alleged disability but because of her poor performance. Because Pritchard has not met her burden of demonstrating that MacNeal's proffered reason for firing her is merely a pretext for discrimination against her based on her alleged disability, MacNeal deserves summary judgment on Pritchard's disability discrimination claim under the Rehabilitation Act.

Accordingly, the court grants MacNeal's motion for summary judgment.

### III. *CONCLUSION*

For the foregoing reasons, Pritchard's motion to strike summary judgment evidence is denied; MacNeal's motion for summary

judgment is granted; and judgment is entered for MacNeal and against Pritchard.