**Pamela M. JONES, Plaintiff,**

v.

**FAMILY HEALTH CENTERS, INC., et al., Defendants.**

**No. 5:01–4796–23.**

United States District Court, D. South Carolina, Orangeburg Division.

Aug. 12, 2003.

Pamela Maria Jones, Columbia, SC, pro se.

John Robert Murphy, Brent Morris Boyd, John M. Grantland, Murphy and Grantland, Columbia, SC, for Defendants.

## ORDER

DUFFY, District Judge.

Pamela M. Jones ("Jones") brought this *pro se* action against Family Health Centers, Inc. ("FHC"), Arthur Kennedy, M.D. ("Kennedy"), Al Hanna ("Hanna"), and Carolyn Emmanuel–McLain ("McLain"), alleging violations of Title VII, 42 U.S.C. § 2000e *et. seq.*, and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"). The record includes a Report and Recommendation ("R & R") of a United States Magistrate Judge, which was made in accordance with 28 U.S.C. § 636(b)(1)(B). Jones has filed timely objections to the R & R.[1]

## BACKGROUND [2]

In August 1998, Jones moved from Georgia to Orangeburg and accepted employment with FHC as a family nurse practitioner. Jones accepted the position in order to satisfy her contract with the National Health Service Corps ("NHSC"), wherein Jones agreed to perform a certain number of hours of payback service in exchange for NHSC providing financial support for her graduate-level nurse practitioner training and education.

FHC is a non-profit organization that provides medical services to primarily indigent patients in and around Orangeburg, South Carolina. (Jones Dep. at 53.) It has approximately 14 offices or provider locations, including its main office in

---

**1.** Jones submitted objections on July 2, 2003, and she submitted revised objections on July 16, 2003. The court has considered the revised objections in reviewing the R & R.

**2.** For purposes of resolving Defendants' summary judgment motion, the court considers the facts in the light most favorable to Jones, as the non-moving party.

Orangeburg. For the first two months, Jones worked primarily at the main office. (Jones Dep. at 61.) She then began rotating between the Hunter Kinard Tyler ("HKT") school in Neeses, South Carolina, the main office, and the Norfield office. (Jones Dep. at 66; Hanna Aff. ¶ 6.) Jones, along with the rest of the medical staff, was asked to travel to other locations when those locations had staffing shortages. (Jones Dep. at 67–68.)

In December 1998, Jones was rear-ended by a vehicle while her vehicle was stopped. The impact caused Jones to sustain whiplash, and she was treated at FHC and excused from work for two weeks. (Obj. at 3.) Jones also alleges that the accident aggravated prior injuries and conditions that Jones had sustained when she was assaulted by a patient in 1987.

On June 6, 2000, Jones moved to Lexington, South Carolina, which is approximately forty miles away from Orangeburg. (Jones Dep. at 89.) At some point in June 2000, Jones requested an exemption from working at the Vance, St. George, and Holly Hill sites, claiming that those sites involved excessive travel and aggravated the injuries to her back.[3]

Jones was not asked to work in Vance, St. George, or Holly Hill during the month of June. (Jones Dep. at 118.) In July, she was scheduled to work two days at the Vance site.[4] (Obj. at 6; Jones Dep. at 118; Pl.'s Ex. 7.) Jones then contacted her chiropractor, Dr. Henderson, who faxed a letter to Defendants on Jones's behalf, stating that Jones had been under her

active care until April 2000 and that driving might exacerbate Jones's previous symptoms. (Obj. at 6; Pl.'s Ex. 27.) Jones worked the two days in Vance but had further conversations with Hanna, Kennedy, and Patterson about not being scheduled to work in Vance, St. George, or Holly Hill. In September, Jones was scheduled to work two days in Vance, but she was ultimately excused from work on both days.

On August 31, 2000, Jones submitted a resignation letter, stating that her last date of work would be on November 30, 2000. Jones's resignation letter provided:

It is with much thought and sadness that I am tendering my resignation, effective November 31, 2000. I have decided to seek employment in the Columbia area. I live in Lexington, which is 40 miles away from Orangeburg. As a single parent I feel I need a stable work environment preferably closer to home for the sake of my child (in case of illness or emergency).

(Jones Dep. at 145.)

Jones alleges that, after tendering her resignation, she was subjected to continued harassment. She contends that Kennedy routinely imposed last-minute scheduling changes and continued to require her to work at the Vance site, despite being notified of her health problems. (Obj. at 7–8; Pl.'s Ex. 7.) For example, Jones relies heavily on various incidents that took place in September with respect to her schedule. In September, Jones was scheduled to

---

**3.** Prior to her move, Jones was approximately thirty-five to forty miles from Vance, approximately forty miles from Holly Hill, and approximately forty-five miles from St. George. After her move, she was approximately seventy to eighty miles from Vance, eighty to ninety miles from St. George, and seventy to eighty miles from Holly Hill. (Jones Dep. at 100.) From Orangeburg to the HKT school in Neeses, the distance was approximately twenty-

five miles. After Jones's move, the distance to Neeses was approximately forty miles.

**4.** Jones was also scheduled to work one day at the St. George site, but she was later "rerouted" to the St. Matthews site on the day that she was scheduled to be in St. George. (Pl.'s Ex. 7 Memo. Dated 9/20/2000 from Jones to Hanna.)

work in Vance on the 18th and the 19th. Kennedy allowed Jones to miss work on the 18th so that she could prepare for a court appearance. (Pl.'s Ex. 7.) On the 18th, Jones telephoned Kennedy and informed him that she was not "feeling well enough to make th[e] drive [to Vance] and put the extra strain on her back." (Pl.'s Ex. 7.) In response, Kennedy excused her from work. (Pl.'s Ex. 7.) Jones then asked "[w]here do you want me to report tomorrow?" Kennedy answered, "I thought you didn't feel good. It sounds to me as though you are trying to dictate where you will work and that is not going to happen. If you don't feel well then don't come to work, but if you come to work then you are going to go to Vance, I'm not going to send you any place else." (Pl.'s Ex. 7.) Jones did not report for work on the 19th. On September 20, Kennedy telephoned Jones to inquire about her health and to ask about her ability to work at the Vance site. (Obj. at 8.) Jones informed Kennedy that she felt well enough to work, but she refused to report to work in Vance. She stated that she would work anywhere other than Vance, and that if Kennedy "need[ed] to discipline [her] then that [was] what [was] going to have to happen." (Pl.'s Ex. 7 at 6.) Jones then drove to Orangeburg to report to work and was informed that she had received a five-day suspension (which was later reduced to three days) for her refusal to work at the Vance office. (Jones Dep. at 149–51; Obj. at 8.)

On September 25, 2000, Dr. Henderson wrote a letter to Hanna stating that Jones's symptoms from the motor vehicle accident were aggravated by daily activities, including driving and prolonged sitting, standing, and walking (for longer than one hour at a time uninterrupted). FHC paid Jones for her services through November 30, 2000, but released her from her work obligations in early November 2000. (Hanna Aff. ¶ 10.)

In October 2000, Jones was diagnosed with myofascial pain syndrome.[5] Jones filed a complaint with the South Carolina Human Affairs Commission ("SHAC") in November 2000, alleging that FHS had discriminated against her and had unlawfully terminated her employment. (Obj. at 10.) Following an investigation, SHAC dismissed the complaint, finding that there had been no discrimination.

## DISCUSSION

### I. Magistrate Judge's R & R

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 269, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The court reviews *de novo* those portions of the R & R to which a specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1)(C).

After a review of the entire record, the R & R, and Jones's objections, the court finds that the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Therefore, the court adopts the Magistrate Judge's R & R in full and incorporates it by specific reference.

5. According to the medical articles submitted by Jones, myofascial pain syndrome involves musculoskeletal pain that occurs when a "trigger point" develops in a muscle. The disorder is closely related to fibromyalgia. Fibromyalgia is a disease that involves pain and fatigue; its cause is unknown, and the symptoms are subjective.

## II. Legal Standard For Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir.1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir.1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir.1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548.

## III. Objections

### A. Failure to Accommodate

■ Jones first argues that Defendants violated the ADA by failing to accommodate her disabilities. To establish a *prima facie* case for failure to accommodate, Jones must show: (1) she was an individual with a disability within the meaning of the ADA; (2) Defendants had notice of her disability; (3) with reasonable accommodation, Jones could perform the essential functions of the position; and (4) Defendants refused to make such accommodations. *See Rhoads v. FDIC*, 257 F.3d 373, 387, n. 11 (4th Cir.2001), *cert. denied*, 535 U.S. 933, 122 S.Ct. 1309, 152 L.Ed.2d 219 (2002). Defendants contend that Jones has not demonstrated that she is "disabled" within the meaning of the ADA and, therefore, cannot establish the first element of the *prima facie* case.

■ The ADA defines a "disability," as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). 42 U.S.C. § 12102(2)(A). The determination of whether an individual is disabled is an individualized inquiry, particular to the facts of each case. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). The question of whether a plaintiff is disabled "is a question of law for the court, not a question of fact for the jury." *Hooven–Lewis v. Caldera*, 249 F.3d 259, 268 (4th Cir.2001). In the absence of proof of how an individual is substantially limited in performing a major life activity by his or her alleged impairment, and to what degree, it is appropriate to dismiss the claim as a matter of law. *EEOC v. Sara Lee Corp.*, 237 F.3d 349, 352–53 (4th Cir.2001).

"The phrase 'substantially limits' sets a threshold that excludes minor impairments from coverage under the ADA." *Id.* at 352. "Substantially limits" means:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner,. or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(i)-(ii).

The impairments that are alleged to make Jones disabled are: (1) myofascial pain syndrome; (2) Sjogrens Syndrome ("SS"); (3) scoliosis; and (4) fibromyalgia. (Obj. at 24; Pl's Ex. 24.) Many of the medical records submitted by Jones support a finding that she suffers from myofascial pain syndrome and fibromyalgia.[6] The records also indicate that Jones has been diagnosed with "[v]ery minimal left convex mid-thoracic scoliosis." (Pl's Ex. 34.) However, although Jones has repeatedly described herself as having been diagnosed with SS, the medical evidence submitted by Jones does not support this diagnosis.[7]

In any event, "[m]erely having an impairment does not make one disabled for purposes of the ADA." *Toyota Motor Manufacturing, Ky., Inc. v. Williams*, 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). Claimants also need to demonstrate that the impairment substantially limits a major life activity. *See* 42 U.S.C. § 12102(2)(A). Even assuming the existence of some or all of the claimed disabilities, the record contains no evidence from which a trier of fact could conclude that they, when considered individually or in combination, were substantially limiting in any way here relevant.

█ Jones's principal assertion is that she is substantially limited in the major life activity of driving. This claim fails because, as the Magistrate Judge noted, driving is not a major life activity.[8] *See Wyland v. Boddie–Noell Enterprises, Inc.*, 165 F.3d 913, 1998 WL 795173 at *3 (4th Cir.1998) (citing 29 C.F.R. § 1613.702(c); *Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998)); *Chenoweth v. Hillsborough County*, 250 F.3d 1328, 1329–30 (11th Cir.2001) ("[M]illions of Americans do not drive, millions are passengers to work, and deprivation of being self-driven to work cannot be sensibly compared to inability to see or to learn."); *Sinkler v. Midwest Prop. Mgmt. Ltd.*

---

**6.** Jones has submitted medical records from, *inter alia*, The Psychological Studies Institute Counseling Center, FHC, Carolina Orthopaedic Associates, Orangeburg Chiropractic Center, Lexington Medical Center, Lexington Family Practice, The Arthritis and Osteoporosis Center, Sports Plus Physical Therapy, Ellis Physical Therapy Associates, Lexington Chiropractic Center, The Carolina Spine Institute, Health Works with Palmetto Health Alliance, and Health South Medical.

**7.** As Jones notes in her objections, there are references in the medical reports to a elevated levels of Anti–Nuclear Antibodies ("ANA") in her blood tests, which would support a diagnosis of some autoimmune disease, such as Lupus or SS. (Obj. at 5.) However, Jones concedes that she has not submitted any records in which SS is established "as a firm

diagnosis." (Obj. at 5.) Indeed, some of the medical records indicate that SS was "ruled out" as a firm diagnosis. (Pl.'s Ex. 29.)

**8.** Jones also suggests that she is limited in performing "manual tasks," but the only manual task that she identifies is driving. (Obj. at 22.) Under the reasoning of *Toyota Motor Manufacturing, Ky., Inc. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), this is not sufficient proof that she was substantially limited in major life activity of performing manual tasks. *Id.* at 200–01, 122 S.Ct. 681 ("When addressing the major life activity of performing manual tasks, the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with her specific job.").

*P'ship*, 209 F.3d 678, 685 (7th Cir.2000) ("[g]etting to and from work" is not itself a separate major life activity); *Colwell v. Suffolk Co. Police Dep't*, 158 F.3d 635, 643 (2d Cir.1998) (same).

■ Jones also argues that she is significantly limited in her ability to work. *See Sutton*, 527 U.S. at 492, 119 S.Ct. 2139 (working assumed to be major life activity). When the major life activity at issue is working, "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). Rather, Jones must show that the disabilities precluded her from a *substantial* class of jobs. See 29 C.F.R. § 1630.2(j)(3)(i). This she has not done. *Cf. Helfter v. UPS*, 115 F.3d 613, 618 (8th Cir.1997) (holding that similar impairments do not "create a genuine issue of material fact as to whether her impairment rendered the plaintiff unable to perform a class of jobs or a broad range of jobs in various classes within a geographical area to which she had reasonable access."). Jones has extensive experience and education, and her allegations fall well short of establishing that her limitations preclude her from a substantial class of jobs.

Jones also maintains that her medical conditions, when considered individually or collectively, substantially limited her in the major life activities of sleeping, sitting, standing, and walking. (Obj. at 23.) While Jones has submitted evidence establishing some limits on her ability to engage in these activities, she has not advanced evidence sufficient to show that such limitations are "significant" as compared with the average person.[9] *Williams*, 534 U.S. at 196–97, 122 S.Ct. 681 (stressing that the ADA's "substantially limits" requirement indicates that an impairment must interfere with a major life activity " 'considerabl[y]' or 'to a large degree' "); *Albertson's, Inc. v. Kirkingburg*, 527 U.S. at 565, 119 S.Ct. 2162 (explaining that a "mere difference" does not amount to a "significant restric[tion]" and therefore does not satisfy the EEOC's interpretation of "substantially limits").

The regulations recommend that the following factors be considered in determining whether an individual is substantially limited in a major life activity: "(i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630(j)(2). The medical records submitted by Jones establish that she suffers temporary impairments of short duration with little or no permanent impact. *Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462, 470–72 (4th Cir.2002), *cert. denied*, 537 U.S. 827, 123 S.Ct. 122, 154 L.Ed.2d 39 (2002) (concluding that back injury was temporary, and therefore insubstantial for purposes of the ADA); *Sara Lee*, 237 F.3d at 352–54 (discussing "intermittent manifestations" and concluding that limitations on ability to sleep, work, care for oneself were not significant). Furthermore, the medical records indicate that Jones's limitations can be adequately mitigated through counseling, exercise, and medication, including antidepressants. *See Murphy v. UPS*, 527 U.S. 516, 520–21, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999) ("an individual claiming a disability under the ADA should be assessed with regard to any mitigating or corrective measures em-

---

**9.** Jones relies primarily on the letter written by her chiropractor, Dr. Henderson, in which she opined that Jones should avoid excessive strain on the back and excessive stair climbing or ladder climbing; should not walk, sit, stand for more than one hour, without interruption; and should take frequent rest breaks. (Obj. at 26; Pl.'s Ex. 27.)

ployed"); *Pollard,* 281 F.3d at 469 ("Doctors' evaluations, which indicate that an individual's impairment is improving, are persuasive evidence that the impairment is expected to be only temporary.").

The court finds particularly persuasive the Seventh Circuit's discussion in *Colwell v. Suffolk County Police Dep't,* 158 F.3d 635 (2d Cir.1998), wherein the court rejected similar claims of disability by police officers. In *Colwell,* one officer alleged that, among other things, he had difficulty sitting for a "prolonged" time at work. *Id.* at 644. Another officer testified that he could not sit for long periods of time without getting up to stretch. The Seventh Circuit held that neither officer was disabled because the evidence did not show that the officers were " *'substantially'* impaired in [their] ability to stand, sit, lift, bend, or reach as compared with the average person." [10] *Id.* (emphasis added); *see also Pollard,* 281 F.3d at 471 (concluding that restrictions that plaintiff not lift more than twenty-five pounds or bend repetitively were "not significantly restricting"); *Kaley v. Icon Int'l, Inc.,* No. IP99–1750–CH/K, 2001 WL 1781898, at *6–7 (S.D.Ind. Dec. 4, 2001) (concluding that the plaintiff failed to show that his fibromyalgia symptoms substantially limited him in a major life activity, because the adverse effects were "not of a nature or level of severity that impose significant restrictions on Kaley compared to the average person in the general population"). Accordingly, on the evidence presented by Jones, a jury would be unable to find that she is disabled for purposes of the ADA.

■ Alternatively, Defendants are entitled to summary judgment because they reasonably accommodated those limitations of which they had notice. Jones was not diagnosed with myofascial pain syndrome until October 2000, after she resigned from FHC. It was not until September 25, 2000, also after Jones had resigned, that Dr. Henderson submitted a letter in which she opined that Jones could not sit for longer than one hour at a time (uninterrupted). Prior to Jones's resignation, FHC had been notified only of Jones's back pain and of Dr. Henderson's opinion that "driving may very well exacerbate" Jones's injuries. (Pl.'s Ex. 27 Letter Dated 7/14/2000 from Henderson to Patterson.) Defendants reasonably accommodated this limitation by excusing her from work on every instance where Jones informed Defendants that she was not feeling well. For example, Jones recites one incident where Shauna Patterson telephoned and asked if Jones would mind going to Vance on August 31. Patterson told Jones, "You don't have to go, I'm just asking if you'd mind." (Jones Dep. Ex. 6.) When Jones told her that she could not go because of her back, Patterson did not require her to go to Vance. Jones was later scheduled to work two days in Vance in September, but Patterson included a note that stated, "Miss Jones, if you have issues with being scheduled for Vance on the 18th and 19th, please contact me to discuss the matter." (Jones Dep. Ex. 6.) After Jones contacted Kennedy and told him that she was not feeling well enough to make the drive to Vance, she was excused from work. (Jones Dep. Ex. 6.)

Jones argues that this accommodation was unreasonable because she requested an exemption from certain sites that she deemed to involve excessive travel, not a general exemption from work. However, "[a] qualified individual with a disability is not entitled to the accommodation of her choice, but only to a reasonable accommodation." *Stewart v. Happy Herman's Che-*

---

**10.** Similarly, Jones has not advanced proof that she has a "record of" such an impairment or that she was "regarded as" having such an impairment.

*shire Bridge, Inc.*, 117 F.3d 1278, 1285–86 (11th Cir.1997); *see also Baert v. Euclid Beverage, Ltd.*, 149 F.3d 626, 633 (7th Cir. 1998) (employer has a duty to provide reasonable accommodations, but is not obligated to provide the requested or preferred accommodation). Based upon the medical information that Defendants had been provided regarding Jones's condition, it was objectively reasonable to excuse her from all travel, rather than from certain sites that ostensibly involved "excessive" travel. Accordingly, Defendants made reasonable accommodations for Jones's condition, in compliance with the ADA.

## B. Title VII

■ In her complaint, Jones alleges gender discrimination, in violation of Title VII. (Compl. at 6.) The Magistrate Judge concluded that this claim had been abandoned, as she did not address it in her opposition memorandum. (R & R at 8.) In her objections, Jones claims that she did not intend to abandon her gender discrimination claim, but she concedes that she failed to address the claim in her opposition memorandum, despite being notified of the consequences of failing to do so. Accordingly, the court agrees with the Magistrate Judge that this claim has been waived.

Even if the claim had been preserved, the court would find that Defendants are entitled to summary judgment. There are two methods for proving intentional discrimination in employment: (1) through direct evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden-shifting scheme set forth by the Supreme Court in *McDonnell Douglas*. For the first method, an employee may utilize "ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 606–07 (4th Cir.1999) (quoting *Tuck v. Henkel*

*Corp.*, 973 F.2d 371, 374 (4th Cir.1992)). In order to overcome a summary judgment motion based upon this method of proof, the plaintiff " 'must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact.' " *Id.* (quoting *Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir.1988)). More specifically, the plaintiff must provide " 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.' " *Id.* (quoting *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir.1995)).

Jones has not pointed to any direct evidence of gender discrimination. Thus, she must satisfy the burden-shifting proof scheme outlined in *McDonnell Douglas*. Once Jones establishes a *prima facie* case, the burden shifts to Defendants to "rebut the presumption of discrimination" by producing evidence that the employment action in question was taken "for a legitimate, nondiscriminatory reason." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Finally, if Defendants meet their burden of production, the presumption raised by the *prima facie* case is rebutted and "drops from the case," *id.* at 255 n. 10, 101 S.Ct. 1089, and the burden shifts back to Jones to establish that Defendants' response is a pretext for illegal discrimination.

■ Jones's discrimination claim is premised on the belief that Kennedy had a "culture bias" based upon his "African heritage." (Jones Dep. at 192.) She complains about the manner in which he implemented the scheduling changes, alleging that he singled her out as a female. (Jones Dep. at 127–28.) In large part, Jones relies upon Kennedy's treatment of the male physicians to support her claim of

discrimination. However, as the Magistrate Judge noted, the physicians are not similarly-situated to the nurse practitioners. (R & R at 8–9 (discussing *prima facie* case)). In particular, the physicians had different training, different responsibilities, and different scheduling demands than the nurse practitioners. (Jones Dep. at 131.)

Assuming that Jones has established a *prima facie* case of discrimination, the burden shifts to Defendants to offer a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. 1817; *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Defendants assert that the frequency of Jones's scheduling changes was a product of her working relationships at her primary site. Specifically, FHS asserts that Jones has "personality conflicts" with other employees at the Hunter Kinard Tyler school ("HKT"), which was intended to be Jones's primary site, and that "the representative of HKT asked that she not be assigned to them." (Hanna Aff. at ¶ 6.) "As a result, [FHS] had to send her to various sites to try to keep her employed." (Hanna Aff. at ¶ 6.)

Having offered a legitimate, non-discriminatory reason for its scheduling decisions, the presumption of discrimination raised by the *prima facie* case "drops out of the picture," and Jones is left with the ultimate burden of proving that the defendant's explanation is a mere pretext for discrimination. *See Reeves*, 530 U.S. at 143, 120 S.Ct. 2097. The Supreme Court's decision in *Reeves* makes clear that, "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148, 120 S.Ct. 2097.

■ After reviewing the parties' submissions and memoranda, the court finds that Jones has not created a genuine issue of material fact as to pretext. Indeed, she concedes that she had conflicts with different people at the HKS site. (Jones Dep. at 118–25.) Although Jones makes numerous allegations regarding pretext, she has failed to identify sufficient evidence to support these allegations. Fed.R.Civ.P. 56(e) (requiring Jones, as the nonmoving party, to go beyond the "mere allegations or denials" of the pleadings and by his own affidavits, or by the "depositions, answers to interrogatories and admissions on file, designate specific facts showing there is a genuine issue for trial."); D.S.C. Loc. R. 7.05(5) ("[w]here the memorandum opposes a motion for summary judgment, a concise statement of the material facts in dispute shall be set forth *with reference to the location in the record.*" (emphasis added)); *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1025 (10th Cir.1992) (noting that in the absence of a specific reference, the court will "not search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury"). Accordingly, Jones's Title VII claim of gender discrimination is subject to dismissal.

**C. Retaliation**

■ Jones also claims retaliation in violation of the ADA and Title VII. (Obj. at 11.) Apparently, her retaliation claim is based primarily on FHC's decision to release her, with pay, from her contractual obligation to work the entire 90–day notice period after she resigned. To make out a claim for retaliation under the ADA, Jones must establish three *prima facie* elements: (1) that she engaged in protected activity; (2) that her employer took an adverse action against her; and (3) that a causal connection existed between the adverse ac-

tivity and the protected action. *Haulbrook v. Michelin North America, Inc.,* 252 F.3d 696, 706 (4th Cir.2001). Similarly, to make out a Title VII claim for retaliation, Jones must show: (1) participation in a protected activity; (2) subjection to an adverse job action; and (3) a causal connection between the activity and the adverse action. *See Matvia v. Bald Head Island Mgmt., Inc.,* 259 F.3d 261, 271 (4th Cir.2001). Jones has not forecast evidence showing a causal connection between any protected activity and any adverse action taken by Defendants. Accordingly, Defendants are entitled to summary judgment on this claim.

### D. Constructive Discharge

■ Jones next alleges constructive discharge, in violation of the ADA and Title VII. These claims fail because Jones cannot show that Defendants took "deliberate" actions to make Jones's working conditions "intolerable" in an effort to force her to resign. *Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir. 1985) (holding that plaintiff alleging constructive discharge must prove deliberateness of the employer's action, and intolerability of the working conditions); *Martin v. Cavalier Hotel Corp.,* 48 F.3d 1343, 1353–54 (4th Cir.1995) (same). To the contrary, the evidence shows that she was excused from work on every instance where she indicated that her medical conditions prevented her from attending work. "Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Carter v. Ball,* 33 F.3d 450, 459 (4th Cir.1994). Accordingly, Defendants are entitled to summary judgment on these claims.

### E. Harassment/ Hostile Work Environment

Jones claims that the constant schedule changes and "negative behavior" amounted to actionable harassment under the ADA and/or Title VII. Having considered all of Jones's objections, the court concludes that the Magistrate Judge's discussion of these claims, which has been specifically incorporated into this Order, fully justifies denying relief. (R & R at 15–16.)

### F. "Title VII Disability Discrimination"

■ Jones also objects to the Magistrate Judge's failure to consider her "Title VII disability discrimination complaint." (Obj. at 11.) Title VII proscribes discrimination on the basis of race, color, sex, national origin, and religion. It does not create a cause of action for "disability discrimination." Accordingly, this objection is without merit.

### G. State Law Claims

To the extent that Jones is attempting to assert claims under South Carolina law, these claims are dismissed without prejudice for refiling in state court.

### CONCLUSION

It is, therefore,

**ORDERED**, for the foregoing reasons that the Defendants' Motion for Summary Judgment is **GRANTED**. The state law claims are **DISMISSED** without prejudice for refiling in state court.

**AND IT IS SO ORDERED.**